HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JANE SULLIVAN *et al.*,

    Plaintiffs,

    v.

THE UNIVERSITY OF WASHINGTON *et al.*,

    Defendants.

Case No. 2:22-cv-00204-RAJ

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

## I.  INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order. Dkt. # 2. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, the motion is **GRANTED**.

## II.  BACKGROUND

At the University of Washington is an animal research committee. Members of that committee are anonymous. Last year, a member of an animal rights organization requested several documents from the university. The university intends to grant that request and release those documents. Those documents would reveal the committee members' personal identifying information. Now, the committee members, former, current, and alternate, seek to enjoin the university from releasing those documents. This Court must determine those members are entitled to injunctive relief.

ORDER – 1

The Institutional Animal Care and Use Committee ("IACUC") at the University of Washington monitors animal research conducted at the university. Dkt. # 3 ¶¶ 1-2. The committee "approves and monitors all proposed projects that include vertebrates or cephalopods" to "ensur[e] that animals receive the care, treatment and respect they deserve as critical components of biomedical research to find cures for diseases and conditions that afflict both humans and animals." *Id.* ¶ 2.

The IACUC hosts monthly public meetings, where members of the public may speak. *Id.* ¶ 4. Some members of the public hope to end the University of Washington's animal research outright. *Id.* ¶ 7. Their comments vary, from referring to researchers as "sadistic" to comparing the university and IACUC to Auschwitz and Nazis. Dkt. # 5 ¶¶ 7-8. On other occasions, "individuals associated with animal research" at the university have even received "harassing emails, letters and voice messages, some including threatening language." Dkt. # 3 ¶ 7; *see also* Dkt. # 4 ¶¶ 6-7 (picketing outside of researcher's private home, kidnapping of pets), Dkt. # 5 ¶¶ 7-8 (calling animal researchers "vile [expletive] humans" and saying "I'm going to do what is necessary to stop animal research").

Given the hostility, IACUC members are anonymous, currently "identified only by initials online and in [the committee's] publicly posted meeting minutes." Dkt. # 3 ¶ 8. Yet opponents of animal research seek to obtain certain documents from the university that would end that anonymity.

People for the Ethical Treatment of Animals ("PETA") is an organization that seeks to "expos[e] the cruelty of animal tests" to "ensure their imminent end." Dkt. # 2 at 5-6. Last year, a PETA representative made a request for public records under Washington's Public Records Act. Dkt. # 3 at 8. Specifically, the representative requested the "appointment letters" of IACUC members. *Id.* Those letters contain personal identifying information of the committee members: names, email addresses, titles, department affiliations, and more. *Id.* ¶ 12.

ORDER – 2

1   The University of Washington intends to grant that public records request. *Id.* at
2   6. It said that it would release the documents tomorrow, February 25, 2022, unless a
3   court order enjoining the university is entered today at 4:00 P.M. *Id.*
4   Fearing that the release of this personal information would result in harassment
5   and threats, members of IACUC (current, former, and alternate) are suing the University
6   of Washington. Dkt. # 1 ¶¶ 1-5. They have also moved for preliminary injunctive relief.
7   Yesterday, Plaintiffs filed a motion for a temporary restraining order ("TRO"). Dkt. # 2.
8   They ask the Court to enjoin the university from disclosing personal identifying
9   information of any current, former, or alternate member of IACUC in response to any
10  public records request. Dkt. # 2-1. The University of Washington does not oppose the
11  motion. Dkt. # 14.

### III.  LEGAL STANDARD

Like a preliminary injunction, issuance of a TRO is "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Under Federal Rule of Civil Procedure 65(b), a party seeking a TRO must make a clear showing (1) of a likelihood of success on the merits, (2) of a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of hardship tips in her favor, and (4) that a temporary restraining order in is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (articulating standard for preliminary injunction); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical").

In the alternative, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction [or TRO] may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Feldman v. Ariz. Sec. of State's Office*, 843 F.3d 366, 375 (9th Cir. 2016) (internal quotation marks omitted)

ORDER – 3

(emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

## IV. DISCUSSION

The Court has reviewed Plaintiffs' submissions and determines that all *Winter* requirements have been met. Plaintiffs are therefore entitled to a TRO.

Starting with the merits, the Court finds that Plaintiffs have at least raised serious questions. Plaintiffs assert a First Amendment claim for the violation of their constitutional freedom to associate. Dkt. # 1 ¶¶ 45-49. To prevail on this claim, they must show that (1) they were engaged in protected First Amendment activity and (2) disclosure of that personal information would subject them to "threats, harassment, or reprisals" that would have a chilling effect on that activity. *John Doe No. 1 v. Reed*, 561 U.S. 186, 200 (2010) (quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)); *see also Does 1-10 v. Univ. of Washington*, 798 F. App'x 1009, 1010 (9th Cir. 2020).

Here, Plaintiffs have raised serious questions on this claim. The IACUC members appear to be engaged in university research. That constitutes expressive conduct under the First Amendment. *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 312 (1978) ("Academic freedom, though not a specifically enumerated constitutional right, long has been viewed as a special concern of the First Amendment."). And, based on this record, the release of IACUC members' personal identifying information would likely result in threats, harassment, or reprisal. Opponents of animal research have apparently picketed outside of a University of Washington researcher's private home. Dkt. # 4 ¶ 2. A research opponent has said that they were "going to do what is necessary to stop animal research." Dkt. # 6 ¶ 8. Some researchers have even had their pets kidnapped by such opponents. Dkt. # 4 ¶ 7.

Turning to the balance of the equities and the public interest, the Court finds that these factors tip sharply in Plaintiffs' favor. No doubt, the public has an interest in the University of Washington's animal research. Yet the public already has access to much

ORDER – 4

of this information. IACUC meetings are public—indeed, they are on Zoom, allowing the public across the country to join. Dkt. # 3 ¶ 4. At those meetings, members from the public may make statements. *Id.* Meeting minutes are also made public. *Id.* What incremental knowledge would be gained from the "appointment letters" seems marginal. It appears that the letters would just provide personal identifying information of IACUC members, contributing little, if anything, to the public's understanding of the type of research the university conducts.

Meanwhile, the legitimate fear of reprisal tips sharply the other way. Service on IACUC is voluntary. Dkt. # 3 ¶ 13. And IACUC is integral to monitoring research projects to ensure that they comply with state and federal laws. *Id.* ¶ 3. And that research aims at finding cures for human and animal diseases. *Id.* ¶ 2. Many IACUC members fear for their safety. Dkt. ## 4-7. This fear compromises their ability to do their job, maybe even resulting in their resignation or the deterrence of potential future members. Dkt. # 3 ¶ 3.

Finally, the Court finds that irreparable harm would likely result if this information were made public because loss of First Amendment freedoms "unquestionably" constitute irreparable injury. *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014); *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009).

In sum, Plaintiffs have met all four *Winter* factors, entitling them to a TRO.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion for Temporary Restraining Order. Dkt. # 2. The Court temporarily **ENJOINS** Defendants as follows:

> (1) Pending further order of this Court, Defendants are enjoined from disclosing the personal identifying information of Plaintiffs and putative class members, specifically, any current or former member or alternate member of the IACUC, in response or in relation to any request under

ORDER – 5

Washington's Public Records Act, whether in "appointment letters," in communications relating to the Public Records Request, or otherwise, to the extent such disclosure would identify any such individual as associated with the IACUC. Consistent with this Order, Defendants may produce redacted versions of the requested documents. But before producing such documents, they must confer with Plaintiffs to ensure that the redactions fully adhere to this Order.

(2) Although a bond is normally required when granting injunctive relief, the Court declines to require a bond at this point. *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999) ("The district court is afforded wide discretion in setting the amount of the bond."); *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) (finding that the bond amount may be zero if there is no evidence the party will suffer damages from the injunction).

(3) The TRO will be effective upon formal service of this Order and will remain in effect for **14 days**, unless extended by order of the Court.

(4) Defendants are **ORDERED TO SHOW CAUSE** on or before **March 7, 2022**, why the Court should not convert this TRO into a preliminary injunction. Plaintiffs may file a reply on or before **March 9, 2022**.

DATED this 24th day of February, 2022.

*[signature: Richard A. Jones]*
The Honorable Richard A. Jones
United States District Judge

ORDER – 6