HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Jane Sullivan *et al.*,

    Plaintiffs,

    v.

The University of Washington *et al.*,

    Defendants.

Case No. 2:22-cv-00204-RAJ

**ORDER GRANTING PRELIMINARY INJUNCTION**

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction. Dkt. # 2. Intervenor-Defendant People for the Ethical Treatment of Animals, Inc. ("PETA") opposes the motion, Dkt. # 24, and Defendant University of Washington supports a preliminary injunction at this time, Dkt. # 28. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, the motion is **GRANTED**.

## II. BACKGROUND

The Institutional Animal Care and Use Committee ("IACUC") at the University of Washington monitors animal research conducted at the university. Dkt. # 3 ¶¶ 1-2. The committee "approves and monitors all proposed projects that include vertebrates or

ORDER – 1

cephalopods" to "ensur[e] that animals receive the care, treatment and respect they deserve as critical components of biomedical research to find cures for diseases and conditions that afflict both humans and animals." *Id.* ¶ 2.

The IACUC hosts monthly public meetings, where members of the public may speak. *Id.* ¶ 4. Some members of the public hope to end the University of Washington's animal research outright. *Id.* ¶ 7. Their comments vary, from referring to researchers as "sadistic" to comparing the university and IACUC to Auschwitz and Nazis. Dkt. # 5 ¶¶ 7-8. On other occasions, "individuals associated with animal research" at the university have even received "harassing emails, letters and voice messages, some including threatening language." Dkt. # 3 ¶ 7; *see also* Dkt. # 4 ¶¶ 6-7 (picketing outside of researcher's private home, kidnapping of pets), Dkt. # 5 ¶¶ 7-8 (calling animal researchers "vile [expletive] humans" and saying "I'm going to do what is necessary to stop animal research").

Given the hostility, IACUC members are anonymous, currently "identified only by initials online and in [the committee's] publicly posted meeting minutes." Dkt. # 3 ¶ 8. Yet opponents of animal research seek to obtain certain documents from the university that would end that anonymity.

People for the Ethical Treatment of Animals ("PETA") is an organization that seeks to "expos[e] the cruelty of animal tests" to "ensure their imminent end." Dkt. # 2 at 5-6. On June 24, 2021, a PETA representative made a request for public records under Washington's Public Records Act. Dkt. # 3 at 8. Specifically, the representative requested the "appointment letters" of IACUC members for the period from January 1, 2014 to the present. *Id.*; Dkt. # 2 at 6. Those letters contain personal identifying information of the committee members: names, email addresses, titles, department affiliations, and more. Dkt. # 3 ¶ 12.

On February 9, 2022, the University of Washington Office of Public Records and Open Public Meetings informed current IACUC members that they had received the

ORDER – 2

request and intended to release the records by February 25, 2022 unless IACUC members obtained a court order prohibiting the release. Dkt. # 2 at 6. Fearing that the release of this personal information would result in harassment and threats, members of IACUC (current, former, and alternate) filed suit and sought a restraining order against the University of Washington. Dkt. # 1 ¶¶ 1-5. They moved for a temporary restraining order and preliminary injunctive relief. Dkt. # 2. They asked the Court to enjoin the university from disclosing personal identifying information of any current, former, or alternate member of IACUC in response to any public records request. Dkt. # 2-1.

The Court granted a temporary restraining order ("TRO") and ordered Defendants to show cause why it should not convert the TRO into a preliminary injunction. Dkt. # 15. PETA filed an unopposed motion to intervene, Dkt. # 16, which the Court granted, Dkt. # 19. PETA then filed an opposition to the motion for preliminary injunction. Dkt. # 24. The University of Washington filed a response indicating that it did not oppose a preliminary injunction. Dkt. # 28. The Court approved an extension of the TRO through April 28, 2022. Dkt. # 37. Having reviewed all the submissions, the Court now addresses the request for a preliminary injunction.

### III.  LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). The Supreme Court has held that "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell, AK,* 480 U.S. 531, 542 (1987). A party moving for a preliminary injunction must satisfy the four *Winter* factors: (1) a likelihood of success on the merits, (2) a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of hardship tips in her favor, and (4) that a preliminary injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

ORDER – 3

In the alternative, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Feldman v. Ariz. Sec. of State's Office*, 843 F.3d 366, 375 (9th Cir. 2016) (internal quotation marks omitted) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

## IV.  DISCUSSION

In its prior order granting Plaintiffs' request for a TRO, the Court found that Plaintiffs had satisfied the four *Winter* factors. Dkt. # 15. Having considered the parties' arguments regarding the conversion of the TRO to a preliminary injunction, the Court finds that the *Winter* factors are still satisfied. The Court will consider each factor in turn.

**A. Likelihood of Success on the Merits**

Under the Washington State Public Records Act, RCW 42.56 ("PRA"), an agency must make all public records available for public inspection, unless the record falls within specific exemptions or "other statute which exempts or prohibits disclosure of specific information." RCW 42.56.070. A "public record" is defined as "any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." RCW 42.56.010(3). It is undisputed that the University of Washington, as a state agency, is obligated to permit public inspection and copying of public records pursuant to the PRA, and that the requested records are "public records" as defined by the PRA.

It is also undisputed that constitutional protections may serve as exemptions to disclosure under the PRA. *See Seattle Times Co. v. Serko*, 243 P.3d 919, 927 (Wash. 2010) (holding that "[t]here is no specific exemption under the PRA that mentions the

ORDER – 4

protection of an individual's constitutional fair trial rights, but courts have an independent obligation to secure such rights"). Plaintiffs assert that public disclosure of the requested records, likely to result in harassment, would violate their constitutional rights to freedom of expression and association. Dkt. # 2. PETA contends that Plaintiffs have no First Amendment right of association with the University's IACUC because it is "*not* a private association advancing its members' efforts as private citizens to engage in speech, to petition the government for redress of grievances, or to exercise their religion." Dkt. # 24 at 16. Instead, PETA argues, IACUC members are "public employees" making statements pursuant "to their official duties," and are not, as such, protected by the First Amendment. *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)).

Plaintiffs respond that under the Ninth Circuit's holding in *Demers v. Austin*, *Garcetti* does not apply to "speech related to scholarship or teaching" and thus is inapplicable here. Dkt. # 30 at 4 (citing *Demers v. Austin*, 746 F.3d 402, 409 (9th Cir. 2014). In *Demers*, the Ninth Circuit noted that, under *Garcetti*, statements made by public employees "pursuant to their official duties" were not protected under the First Amendment. 746 F.3d at 411. However, the Court continued, "teaching and academic writing are at the core of the official duties of teachers and professors. Such teaching and writing are 'a special concern of the First Amendment.'" *Id.* (quoting *Keyishian v. Bd. of Regents of the Univ. of the State of N.Y.*, 385 U.S. 589, 603 (1967)). The Court agrees that *Garcetti* does not apply here.

The Court finds that Plaintiffs do not fall squarely within the framework set forth in *Demers* or *Garcetti*. As Plaintiffs note, members of the IACUC are not serving on the committee as "*employees*." Dkt. # 30 at 5. Membership on the IACUC is voluntary and members do not receive compensation for their involvement. *Id.* Some members are not even employees of the University of Washington. *Id.*

Based on this record, Plaintiffs have sufficiently shown "that there are serious questions going to the merits" of their First Amendment claim for the violation of their

ORDER – 5

constitutional freedom to associate. Dkt. # 1 ¶¶ 45-49.  Through their voluntary association with the IACUC, members of the committee are likely engaged in protected First Amendment activity.  Disclosure of their personal information would subject them to "threats, harassment, or reprisals" that would have a chilling effect on that activity. *John Doe No. 1 v. Reed*, 561 U.S. 186, 200 (2010) (quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)); *see also Does 1-10 v. Univ. of Washington*, 798 F. App'x 1009, 1010 (9th Cir. 2020).  Finding serious questions as to the merits, the Court next considers whether Plaintiffs establish the other three *Winter* factors to the degree required.

**B. Likelihood of Suffering Irreparable Harm**

With respect to the second *Winter* factor, PETA argues that Plaintiffs fail to show that they are likely to suffer irreparable harm if their identities become known.  Dkt. # 24 at 8.  PETA asserts that Plaintiffs have not produced any "credible evidence . . . that they would be subject to the type of 'threats, harassment, or reprisals,' from which the right to free association offers protections."  *Id.* at 7.

The Court finds, consistent with its prior order, that the release of IACUC members' personal identifying information would likely result in threats, harassment, or reprisal.  Based on the record[1], opponents of animal research have apparently picketed outside of a University of Washington researcher's private home.  Dkt. # 4 ¶ 2.  A research opponent has said that they were "going to do what is necessary to stop animal research."  Dkt. # 6 ¶ 8.  During the public comment period of the IACUC meetings,

---

[1] The Court does not consider the evidence raised by Plaintiffs for the first time in reply in paragraphs 12 and 13 of Exhibit A to the Second Declaration of Jane Sullivan Re: Plaintiffs' Motion for Preliminary Injunction, Dkt. # 31, and the related discussion in Plaintiffs' reply, Dkt. # 30.  Finding that it need not consider the new evidence to determine the outcome, the Court need not consider PETA's arguments or responsive declaration.  The Court instead strikes the new evidence.  *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (holding that "[w]here new evidence is presented in a reply . . . the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond").

ORDER – 6

some individuals have made angry and threatening comments towards members of the IACUC. Dkt. # 4 ¶ 8. Some IACUC members have even had their pets kidnapped by individuals who oppose animal research. Dkt. # 4 ¶ 7.

Such activity stifles free speech and association rights. The Court finds that irreparable harm would likely result if the information at issue were made public because loss of First Amendment freedoms "unquestionably" constitutes irreparable injury. *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014); *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009).

**C. Balance of Hardships and Public Interest**

With respect to the last two *Winter* factors, PETA contends that (1) the balance of equities favors disclosure and (2) public interest in disclosure of IACUC member names outweighs the associational rights of the members, to the extent theses rights are impinged. Dkt. # 24 at 8, 29-30. The Court is unpersuaded.

PETA asserts that it needs the names of the IACUC members to confirm their credentials and whether the IACUC is legally constituted. Dkt. # 24 at 12. However, it appears that there is sufficient oversight to ensure the credentials and legal constitution of the committee. Indeed, multiple independent government agencies perform credential reviews, including the Office of Laboratory Animal Welfare ("OLAW") of the National Institutes of Health, the United States Department of Agriculture, and AAALAC International (formerly known as the Association for Assessment and Accreditation of Laboratory Animal Care International), a voluntary accreditation program focused on the responsible treatment of animals and science. Dkt. # 31 ¶ 3. Plaintiffs contend that over the last five years, each of the three agencies inspected the IACUC member credentials after receiving complaints from PETA and found no basis for citation. *Id.*

Moreover, the fact that IACUC meetings are open to the public also diminishes the public interest in transparency. Dkt. # 30 at 11. As the Court previously noted, IACUC meetings are public—indeed, they are on Zoom, allowing the public across the country to

ORDER – 7

join. Dkt. # 3 ¶ 4.  At those meetings, members from the public may make statements. *Id.*  Meeting minutes are also made public.  *Id.*  What incremental knowledge would be gained from the "appointment letters" seems marginal.  It appears that the letters would just provide personal identifying information of IACUC members, contributing little, if anything, to the public's understanding of the type of research the university conducts.

Meanwhile, the legitimate fear of reprisal tips sharply in favor of Plaintiffs.  Service on IACUC is voluntary.  Dkt. # 3 ¶ 13.  And IACUC is integral to monitoring research projects to ensure that they comply with state and federal laws.  *Id.* ¶ 3.  Many IACUC members fear for their safety.  Dkt. ## 4-7.  This fear compromises their ability to do their job, maybe even resulting in their resignation or the deterrence of potential future members.  Dkt. # 3 ¶ 3.  Once released, the personal identifying information of members cannot be un-released.  The Court thus finds that the balance of the equities tips sharply in Plaintiffs' favor.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction.  Dkt. # 2.  PETA's request to strike, Dkt. # 35, is **GRANTED**.  The Court **ENJOINS** Defendants as follows:

> (1) Defendants are enjoined from disclosing the personal identifying information of Plaintiffs and putative class members, specifically, any current or former member or alternate member of the IACUC, in response or in relation to any request under Washington's Public Records Act, whether in "appointment letters," in communications relating to the Public Records Request, or otherwise, to the extent such disclosure would identify any such individual as associated with the IACUC.  Consistent with this Order, Defendants may produce redacted versions of the requested

ORDER – 8

documents. But before producing such documents, they must confer with Plaintiffs to ensure that the redactions fully adhere to this Order.

(2) Although a bond is normally required when granting injunctive relief, the Court declines to require a bond at this point. *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999) ("The district court is afforded wide discretion in setting the amount of the bond."); *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) (finding that the bond amount may be zero if there is no evidence the party will suffer damages from the injunction).

DATED this 26th day of April, 2022.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 9