HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Jane Sullivan *et al.*,

    Plaintiffs,

v.

The University of Washington *et al.*,

    Defendants.

Case No.  2:22-cv-00204-RAJ

**ORDER GRANTING PRELIMINARY INJUNCTION**

## I.  INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for a Preliminary Injunction. Dkt. # 73. Intervenor-Defendant People for the Ethical Treatment of Animals, Inc. ("PETA") opposes the motion, Dkt. # 75, and Defendant University of Washington does not oppose Plaintiffs' request, Dkt. # 76. Plaintiffs filed a Reply. Dkt. # 79. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, Plaintiffs' motion is **GRANTED**.

## II.  BACKGROUND

The Court briefly recounts the factual and procedural background relevant to

ORDER – 1

Plaintiffs' Motion. A fuller recitation of many of the relevant facts is set forth in the Court's April 26, 2022 preliminary injunction. *See* Dkt. # 38. On April 26, 2022 this Court entered a preliminary injunction enjoining Defendant UW from releasing letters appointing Plaintiffs to the University's Institutional Animal Care and Use Committee ("IACUC") in response to a public records request filed by PETA. *Id.* Plaintiffs alleged that the disclosure of the letters, which contain personally identifying information, would violate their First Amendment right of expressive association. *Id.* This Court granted Plaintiffs' request for a preliminary injunction over PETA's objection after determining that members of the Committee raised a serious question as to whether disclosure of the letters violated their First Amendment right of expressive association. *Id.*

PETA timely filed an interlocutory appeal. *See* Dkt. #41. On February 27, 2023, the United States Court of Appeals for the Ninth Circuit issued its opinion which reversed and remanded this Court's April 2022 preliminary injunction. Dkt. # 67. The Court of Appeals held that, "because the Committee members' association is pursuant to their official duties and not any private expressive activities, it is not protected by the First Amendment right of expressive association." *Sullivan v. University of Washington*, 60 F.4th 574, 582 (9th Cir. 2023).

While PETA's appeal was pending, Plaintiffs filed an Amended Complaint, Dkt. # 44, and on December 22, 2022 they filed a Second Amended Complaint ("SAC") with the consent of UW and PETA. Dkt. ## 56, 57. In addition to the causes of action based on Plaintiffs' right to freedom of association and expression, the SAC asserts that Article I, Section 3 of the Constitution of Washington, the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, and RCW 4.24.580 are "other statutes" that exempt Plaintiffs' personally identifying information from disclosure under Washington's Public Records Act, RCW 42.56.070(1). Dkt. # 56 ¶¶ 58-63. Further, Plaintiffs allege a cause of action based on their constitutional rights of personal security, bodily integrity, and informational privacy under the Washington and United States

ORDER – 2

Constitutions. *Id.* ¶¶ 64-74. On February 24, 2023, PETA filed a motion to dismiss the SAC.

On April 3, 2023, Plaintiffs filed an unopposed motion for a Temporary Restraining Order ("TRO"), Dkt. # 70, which the Court granted the next day. Dkt. # 71. The current TRO is set to expire on May 3, 2023. On April 7, 2023[1], Plaintiffs filed the instant motion to modify the preliminary injunction or, in the alternative, issue a new preliminary injunction based upon the same standards.[2] Dkt. # 73 at 5. On April 24, 2023, both UW and PETA filed responses to Plaintiffs' motion. PETA opposes the issuance of a preliminary injunction, and UW does not oppose entry of a preliminary injunction preventing the disclosure of the records at issue without redaction of Plaintiffs' personally identifying information. Dkt. ## 75, 76. On April 26, 2023, Plaintiffs filed a Motion to Extend the TRO. Dkt. # 77. PETA opposed the motion. Dkt. # 78.

### III.  LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). The Supreme Court has held that "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell, AK,* 480 U.S. 531, 542 (1987). A party moving for a preliminary injunction must satisfy the four *Winter* factors: (1) a likelihood of success on the merits, (2) a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of hardship tips in her favor, and (4) that a preliminary injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

In the alternative, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a

---

[1] The Ninth Circuit's mandate issued on the same date—April 7, 2023. *See* Dkt. # 72.
[2] At the time Plaintiffs filed the instant motion, the Ninth Circuit's mandate had not issued. Given that the mandate has now issued, the Court will construe the instant motion as a request for the issuance of a new injunction. Dkt. # 73 at 3.

ORDER – 3

preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Feldman v. Ariz. Sec. of State's Office*, 843 F.3d 366, 375 (9th Cir. 2016) (internal quotation marks omitted) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

## IV.  DISCUSSION

In its prior order granting Plaintiffs' request for a preliminary injunction, this Court found a likelihood that Plaintiffs would suffer irreparable harm in the absence of preliminary relief, that the balance of the hardships tipped in Plaintiffs' favor, and that a preliminary injunction was in the public interest. Dkt. # 38. The Ninth Circuit declined to disturb this Court's findings on these three *Winter* factors, opining only on whether disclosure of Plaintiffs' identities by UW violated their First Amendment right of expressive association. *Sullivan v. University of Washington*, 60 F.4th at 579.

Judge Fitzwater wrote a concurring opinion in *Sullivan*, noting that,

> Nothing in the panel opinion, however, holds that the State of Washington is obligated through its Public Records Act to require disclosures of personal information that may subject Committee members and their families and pets to threats to their personal safety. As the panel opinion notes, the Act's disclosures requirements are already subject to a wide range of statutory exemptions.

*Id.* at 582-583. Plaintiffs have amended their complaint to assert causes of action based on both statutory and constitutional exemptions from PRA disclosure. SAC ¶ 47-74. The Court now considers Plaintiffs' likelihood of success on the merits of one of their claims, and the other *Winter* factors, in turn.[3]

**A. Likelihood of Success on the Merits**

Plaintiffs argue that they are entitled to injunctive relief based on a right of

---

[3] The parties' preliminary injunction briefing greatly overlaps with the parties briefing on PETA's motion to dismiss the SAC. The Court will address all of the issues raised more fulling in a forthcoming order on PETA's motion to dismiss.

ORDER – 4

informational privacy recognized in the Ninth Circuit. Further, they argue that Washington law recognizes a constitution-based exemption to disclosure of certain records under the PRA based on a right to personal security and bodily integrity. Dkt. # 73 at 2. PETA counters that Plaintiffs are not entitled to any exemption, because there is no threat to Plaintiffs' personal security or bodily integrity, no threat to their constitutional interests in informational privacy, and the legitimate interests in disclosure outweigh any privacy interests. Dkt. # 75 at 15-19. UW takes no position on whether Plaintiffs have established, for the purposes of a preliminary injunction, that release of the relevant records would infringe on their state and federal constitutional rights, but notes that the University has previously cited to this Court significant case law establishing that constitutional protections function as "other statute exemptions" under the PRA. Dkt. # 76 at 7.

   *1.) Standing*

First, PETA argues that Plaintiffs lack standing to bring this suit because, they argue, neither Sullivan nor P. Poe 1 are subject to an injury "that is likely to be redressed by a favorable judicial decision." Dkt. # 75 at 4 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). They argue that, because Sullivan is identified by name, she has no standing in her personal capacity. And because the IACUC is not a separate legal entity from UW, the Committee cannot sue on its own. Dkt. # 75 at 4-5.

To establish standing, "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations and quotations omitted). Further, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, not the result of the independent action of some third party not before the court," and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* "At

ORDER – 5

least one plaintiff must have standing to seek each form of relief requested," and at a very preliminary stage (such as a preliminary injunction), plaintiffs may rely on the complaint or other evidence submitted to meet their burden of establishing standing elements. *City and Cnty. of San Francisco v. United States Citizenship and Immigration Services*, 944 F.3d 773, 786-87 (9th Cir. 2019) (citations omitted).

Based on the record before it, the Court finds that Plaintiffs have standing to litigate this action, given that the release of relevant documents by UW would likely have a "profound negative impact" on Jane Sullivan's work at Chair of the IACUC and the Committee's own functioning. Dkt. # 3 ¶ 13-14. Further, anonymous Committee members attest to their fear of potential injury if the relevant records are released, s*ee* Dkt. ## 5, 6, 7, establishing a "risk" or "threat" of injury.[4] *See Harris v. Board of Supervisors, Los Angeles County*, 366 F.3d 754, 761 (9th Cir. 2004) ("The Supreme Court has consistently recognized that threatened rather than actual injury can satisfy Article III standing requirements.") (citation omitted). It is undisputed that the challenged action—release of currently confidential documents based on a PRA request—is clearly traced to UW, an entity that "takes its obligations under the Public Records Act … very seriously." Dkt. # 76 at 2. And clearly, a favorable decision will prevent Plaintiffs' names from being released, allowing them to maintain the anonymity that they desire.

*2.) Right to Bodily Integrity, Personal Security, and Informational Privacy*

It is undisputed that constitutional protections may serve as exemptions to disclosure under the PRA. *See Seattle Times Co. v. Serko*, 243 P.3d 919, 927 (Wash. 2010) (holding that "[t]here is no specific exemption under the PRA that mentions the protection of an individual's constitutional fair trial rights, but courts have an independent obligation to secure such rights"); *see also Freedom Found. v. Gregoire*, 178 Wn.2d 686, 695 (2013) (noting that "[w]e have recognized that the PRA must give way to constitutional mandates").

---

[4] *See* discussion of specific details concerning Plaintiffs' fear of injury *infra* pp. 8, 10.

ORDER – 6

1  Plaintiffs argue that they show a likelihood of success on the merits, or at least
2  serious questions going to the merits as to their claims based on Washington and United
3  States constitutional rights of personal security and bodily integrity, and informational
4  privacy. Dkt. # 73 at 17; *see also* SAC ¶¶ 64-74. The Ninth Circuit recognizes a
5  constitutional right of informational privacy even in instances where no physical threats
6  have been alleged, Plaintiffs contend, and Washington has recently recognized a right to
7  personal security and bodily integrity exempting from release some public records. Dkt. #
8  73 at 17.

PETA counters that Plaintiffs cannot show a violation of their right to informational privacy because disclosure of the mere fact of public service does not rise to the level of a threat to Plaintiffs' constitutional interests. Dkt. # 75 at 17. Further, PETA argues that Plaintiffs' have no constitutional privacy interest in nondisclosure of their names in "a record of an official act," (such as the requested Committee members' appointment letters) even if such disclosure would harm their reputations. *Id.* at 18 (citing *Paul v. Davis*, 424 U.S. 693, 713 (1076); *Doe v. Garland*, 17 F.4th 941, 946-49 (9th Cir. 2021); and *Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir. 1989)). However, the Court is not persuaded by PETA's argument.

The Ninth Circuit has set forth a standard to be applied when weighing an alleged right to informational privacy against the government's interest in disclosing private information. *In re Crawford*, 194 F.3d 954, 959 (1999). In weighing these "competing interests," the Court must consider:

> … the type of record requested, the information it does or might contain, the potential harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent authorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id.* (citations omitted). The Court also noted that the list was "not exhaustive" and the

ORDER – 7

relevant considerations "will necessarily vary from case to case." *Id.* In considering whether the government's use of the information would advance a state interest and that its actions are narrowly tailored to meet that interest, "it will be the overall context, rather than the particular item of information, that will dictate tipping of the scales." *Id.*

Here, IACUC's monthly meetings are open to the public. Dkt. # 3 (Declaration of Jane Sullivan ISO Motion for TRO) ¶ 4. However, Plaintiffs state that the relevant records (which include Plaintiffs' names and other personally identifying information) are kept confidential in conformance with federal regulations[5] and the practice of UW, in order to protect Committee members from hostility regarding animal research and to address safety concerns. *Id.* ¶¶ 5, 8. Plaintiffs' concerns are not imagined. Sullivan states that the Committee is aware of individuals associated with animal research at UW who receive "harassing emails, letters and voice messages, some including threatening language," and some Committee members have witnessed individuals identifying themselves as PETA members directing threatening communication towards IACUC members. *Id.* ¶ 7; *see also* Dkt. # 6 (Declaration of P. Poe 3 ISO Motion for TRO) ¶ 5. Further, the Committee is aware of two individuals who have been picketed at their home by protestors. *Id.*; *see also* Dkt. ## 4 (Declaration of P. Poe 1 ISO Motion for TRO) ¶ 6. While PETA claims that Plaintiffs' evidence amounts only to instances of "First Amendment-protected speech by animal rights activists," Plaintiffs allege that they experience not just "discomfort," Dkt. # 75 at 17, but concern for their safety and the safety of their pets if their personally identifying information were to be released. Dkt. # 4 ¶ 9; *see also* Dkt. # 3 ¶ 9 ("Many University of Washington IACUC members and alternates have expressed concerns to me about their personal safety, as well as the safety of the people and animals they live with, if their names are released.").

PETA seeks to have this Court depart from the standard set forth in *Crawford*,

---

[5] According to Plaintiffs, federal regulations require that only two members of the Committee be identified by name in federal regulatory reports. Dkt. # 3 ¶ 8.

ORDER – 8

1 citing caselaw concerning the release of records of an "official act." Dkt. # 75 at 18. But the Supreme Court and Ninth Circuit cases cited by PETA (*Paul* and *Garland*) are simply not on point. The *Paul* Court actually rejected a Plaintiff's claim that the State may not publicize a record of an official act, such as an arrest, 424 U.S. at 713, and the *Garland* Court found that a participant in mortgage fraud did not have a privacy interest in information included in a Department of Justice press release concerning the crimes. 17 F.4th at 948. And while PETA appears to assert that Plaintiffs fear harm only to their "reputation", Plaintiffs make clear that their fears center on potential harassment based on what Committee members have already experienced and observed in the course of their service. Additionally, PETA's alternating arguments that they already know Plaintiffs' identities, Dkt. # 75 at 18, or can deduce Plaintiffs' identities, *id.* at 10, cut against PETA's alleged need for access to Plaintiffs' identifying information.

Similarly, Plaintiffs argue that the Washington Constitution guarantees a right to personal security and bodily integrity, and that this right serves as an exemption to the PRA. Dkt. # 73 at 17. Plaintiffs cite *Washington Fed'n of State Emps., Council 28 v. State*, a recent Washington Court of Appeals case in which the court held that public employees who are survivors, or whose immediate family members are survivors, of domestic violence, sexual assault, stalking, or harassment have a substantive due process right to personal security and bodily integrity that precludes the State from disclosing their names, work locations, and work contact information "when doing so presents a substantial likelihood that the employee's physical safety or the safety of that employee's family member would be in danger." 22 Wn. App. 2d 392, 404-05, *rev. granted*, 200 Wn.2d 1012 (2022).

PETA argues that Plaintiffs cannot make an "individualized showing of a risk of physical harm," as contemplated by the Washington Court of Appeals. Dkt. # 75 at 16. However, the *State Emps.* Court held that such a particular showing must be made to support a finding of summary judgment and a permanent injunction. 22 Wn. App. 2d at

ORDER – 9

414. This case is not yet at that stage. PETA further cites several Sixth Circuit cases, including *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) for the proposition that Plaintiffs must allege that they are at "substantial risk of serious bodily harm, possibly even death, from a perceived likely threat" in order to avail themselves of constitutional protections. Dkt. # 75 at 17 (citing *Kallstrom*, 136 F.3d at 1064). However, as Plaintiffs note, *State Emps.* held that such threats are *sufficient* to trigger a constitutional exemption from PRA disclosure, but not *necessary* to do so. Dkt. # 79 at 12. Plaintiffs' stated fears of harassment, and experience of past harassing communications, do not necessarily disqualify them from relief under *State Emps.*

The PRA expresses a "broad mandate for disclosure" but it is nonetheless subject to narrow exemptions. *Freedom Found.*, 178 Wn.2d at 695. Plaintiffs fall within an exemption and have shown that there are "serious questions going to the merits" of their constitutional claim based on personal security, bodily integrity, and informational privacy. The release of records containing Plaintiffs' names and identifying information implicates these constitutional rights and constitutes an exemption from PRA disclosure. Finding serious questions as to the merits, the Court considers the remaining *Winter* factors.

**B. Likelihood of Suffering Irreparable Harm**

With respect to the second *Winter* factor, PETA argues that Plaintiffs fail to show that they are likely to suffer irreparable harm if their identities become known. Dkt. # 75 at 19. PETA asserts that Plaintiffs have not produced any "evidence that they are *likely* to be subject to any true threats of physical harm." *Id.*

The Court finds, consistent with its prior order, that the release of IACUC members' personal identifying information would likely result in threats, harassment, or reprisal. Based on the record, opponents of animal research have apparently picketed outside of a University of Washington researcher's private home. Dkt. # 4 ¶ 2. A research opponent has said that they were "going to do what is necessary to stop animal research."

ORDER – 10

1   Dkt. # 6 ¶ 8. During the public comment period of the IACUC meetings, some
2   individuals have made angry and threatening comments towards members of the IACUC.
3   Dkt. # 4 ¶ 8. Some IACUC members have even had their pets kidnapped by individuals
4   who oppose animal research. Dkt. # 4 ¶ 7.

5   　　　　The Court finds that Plaintiffs are likely to suffer irreparable harm in the absence
6   of relief. Plaintiffs state that it is "extremely disturbing" to be targeted by members of the
7   public who oppose animal research in the course of their duties as Committee members.
8   Dkt. # 3 ¶ 6. Further, some members fear for their safety and that of their pets if the
9   relevant records are released and their anonymity is lost. Dkt. # 4 ¶ 9. And as Plaintiffs
10  note, "once [the] information is released, the harm to Plaintiffs cannot be cured." Dkt. #
11  73 at 23.

12  **C.  Balance of Hardships and Public Interest**

13  　　　　Concerning the third and fourth *Winter* factors, PETA argues that the balance of
14  the equities favors disclosure because Plaintiffs only stand to be exposed to unwanted
15  political speech, while PETA will be frustrated in their attempts to ensure that the
16  IACUC is "legally constituted" and that "the interests of the general community in
17  animal welfare are properly represented." Dkt. # 75 at 19. PETA states that it is their
18  understanding that the composition of IACUC violates federal law and that the
19  Committee fails to prevent the mistreatment of animals at UW. *Id.* (citing Dkt. # 25
20  (Declaration of Kathy Guillermo ISO PETA Opposition to Plaintiffs' Motion for
21  Preliminary Injunction) ¶¶ 5-16). According to PETA, the public interest, as codified by
22  the Washington Legislature, strongly supports the disclosure of Committee members'
23  identities to ensure that the public can evaluate whether UW is in compliance with federal
24  animal welfare law. *Id.* at 20. However, the Court is unpersuaded.

25  　　　　It appears that there is sufficient oversight to ensure the credentials and legal
26  constitution of the committee. Indeed, multiple independent government agencies
27  perform credential reviews, including the Office of Laboratory Animal Welfare

28  ORDER – 11

("OLAW") of the National Institutes of Health, the United States Department of Agriculture, and AAALAC International (formerly known as the Association for Assessment and Accreditation of Laboratory Animal Care International), a voluntary accreditation program focused on the responsible treatment of animals and science. Dkt. # 31 ¶ 3. Plaintiffs contend that over the last five years, each of the three agencies inspected the IACUC member credentials after receiving complaints from PETA and found no basis for citation. *Id.*

Further, as this Court previously noted, Committee meetings are open to the public and only the names of committee members are kept confidential. Therefore, an injunction would not impair the Committee's work and such work would remain open to public participation, inspection, and even opposition. This diminishes the public interest in transparency via the release of the relevant records. As the Court previously noted, IACUC meetings are public—indeed, they are on Zoom, allowing the public across the country to join. Dkt. # 3 ¶ 4. At those meetings, members from the public may make statements. *Id.* Meeting minutes are also made public. *Id.* What incremental knowledge would be gained from the release of Plaintiffs' "appointment letters" seems marginal. It appears that the letters would just provide personal identifying information of IACUC members, contributing little, if anything, to the public's understanding of the type of research the university conducts.

Meanwhile, the legitimate fear of reprisal tips sharply in favor of Plaintiffs. Service on IACUC is voluntary. Dkt. # 3 ¶ 13. And IACUC is integral to monitoring research projects to ensure that they comply with state and federal laws. *Id.* ¶ 3. Many IACUC members fear for their safety. Dkt. ## 4-7. This fear compromises their ability to do their job, maybe even resulting in their resignation or the deterrence of potential future members. Dkt. # 3 ¶ 3. Once released, the personal identifying information of members cannot be un-released. The Court thus finds that the balance of the equities tips sharply in Plaintiffs' favor.

ORDER – 12

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction. Dkt. # 73. Plaintiff's Motion to Extend the TRO is denied as moot. Dkt. # 77. The Court **ENJOINS** Defendants as follows:

(1) Defendants are enjoined from disclosing the personal identifying information of Plaintiffs and putative class members, specifically, any current or former member or alternate member of the IACUC, in response or in relation to any request under Washington's Public Records Act, whether in "appointment letters," in communications relating to the Public Records Request, or otherwise, to the extent such disclosure would identify any such individual as associated with the IACUC.  Consistent with this Order, Defendants may produce redacted versions of the requested documents.  But before producing such documents, they must confer with Plaintiffs to ensure that the redactions fully adhere to this Order.

(2) Although a bond is normally required when granting injunctive relief, the Court declines to require a bond at this point.  *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999) ("The district court is afforded wide discretion in setting the amount of the bond."); *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) (finding that the bond amount may be zero if there is no evidence the party will suffer damages from the injunction).

DATED this 3rd day of May, 2023.

The Honorable Richard A. Jones
United States District Judge

ORDER – 13